ROBERT G. GALAZIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Galazin v. Commissioner
Docket No. 9355-75.
United States Tax Court
T.C. Memo 1979-206; 1979 Tax Ct. Memo LEXIS 315; 38 T.C.M. (CCH) 851; T.C.M. (RIA) 79206; May 24, 1979, Filed *315 Held, the amount and deductibility of various home office expenses determined. Heldfurther, on the facts of this case, petitioner's sister-in-law considered a foster child for purposes of sections 151 (e) and 152, I.R.C. 1954. Robert G. Galazin, pro se. John P. Tyler, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1973 in the amount of $184.88. Two issues are presented for our decision: (1) whether petitioner is entitled to home office expenses in excess of those determined by respondent; and (2) whether petitioner's sister-in-law qualified as a foster child for purposes of section 152(b)(2)[1] during 1973. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, along with attached exhibits, are incorporated herein by this reference. Petitioner was a resident of Hillside, New Jersey at the time of filing his petition herein. He filed a joint [2] Federal income tax return for the taxable year 1973 with the Internal *316 Revenue Service Center, Philadelphia, Pennsylvania. During 1973, petitioner was employed as a salesman for General Mills Chemicals. His work involved the sale of chemicals to paint and adhesive industries. During the year in issue, petitioner was responsible for the geographical area encompassing upstate New York, northern New Jersey, and all of Connecticut. In performing his duties as a salesman, he maintained an office in his home as required by his employer. He was required to make numerous phone calls and he maintained four telephones in his house, one of which was in his office. Although all of his long distance business phone calls were billed to his company's credit card and paid by his employer, he had to pay the monthly base rate of $26.35 for having the four phones in his home. Petitioner had a seven-room home. On his 1973 return, he deducted 14 percent of the utilities expense, 14 percent of the repairs expense, and 14 percent of the insurance expense relating to his home as business expenses relating to the maintenance of an office in his *317 home. Petitioner also deducted $336 for depreciation, $50 for job-related books and $25 for business credit cards. All of these items were allowed by respondent. Petitioner also deducted $168 for "24 hour phone" (petitioner arrived at this figure by allocating $14 of his base monthly bill to business use which apparently represented the approximate base rate for a single telephone) and $52.45 representing the purchase price of a calculator. The calculator was purchased in 1973 and was still in use four years later. In the notice of deficiency, respondent disallowed the entire "24 hour phone" expense, $26.22 (one-half) of the purchase price of the calculator, and $28.25 of the base amount of the utilities (the amount of which petitioner took 14 percent to arrive at his deduction) representing the entire water and garbage collection bills as calculated by respondent, which he contends none is allocable to petitioner's home office. With respect to the phone bill, respondent disallowed the entire amount deducted. Alternatively, on brief, he asserts that if petitioner is entitled to a deduction, it is for $79.05, or one-fourth of the annual base rate. During all of 1973, petitioner's *318 sister-in-law, who was under 19, resided with petitioner in his home as a member of his household. On his 1973 income tax return, petitioner claimed an exemption for her as an "other dependent" on line 6(d). Petitioer now claims his sister-in-law is a foster child. Petitioner's sister-in-law earned more than $750 during that year. OPINION While we believe petitioner has established that he is entitled to some deduction for the cost of his telephones, we do not believe allowing petitioner a deduction for the base cost of a single phone accurately allocates the cost of phone use. The import of the record is such that each additional phone is incrementally less expensive than the initial phone and we believe there is no basis on which to allocate the single phone base rate solely to petitioner's home office. However, given the record before us, [3] *319 we believe it is appropriate to allocate one-fourth of the cost of the phone to business use and three-fourths to personal use thus resulting in a deduction for petitioner of $79.05. Respondent, as an alternate position to outright denial, suggested this. Although petitioner's 14 percent figure was generally accepted by respondent as accurate, respondent disallowed any deduction for water and garbage pick-up, contending they related solely to family household purposes. With respect to the garbage pick-up, respondent argues that "there is no evidence to show that his rates for personal trash pick-up were in any way affected by * * * business trash." As to the water, he argues that such an expenditure is purely personal. Petitioner counters that a portion of the trash collected was business generated and thus that deduction should be sustained. He further contends that the water expense should be allowed as a deduction because of the necessity of bathroom facilities for any office, the use of water for cleaning, and that to the extent water is used in lawn care as a part of home maintenance, a percentage is related to the office. Respondent would have us deny the deduction claimed *320 for garbage pick-up where petitioner does not establish that the business trash resulted in any additional cost. However, we do not believe that is the appropriate test for purposes of determining petitioner's entitlement to the deduction claimed. However, while we do not believe respondent's test is appropriate, we also do not believe petitioner has carried his burden of proof to establish the deduction claimed. While we have no doubt that some portion of the trash was business related, we can see no relationship between the 14 percent figure claimed on the return and used for utilities, repairs and insurance and the garbage pick-up expenditure. Because the record does not otherwise contain sufficient information on which we could make a reasonable estimate as to the proper allocation of that expense, we must deny petitioner any deduction for that expenditure. As for the water expense, we likewise agree with petitioner that some amount of the water is used to maintain the office, but we believe that the 14 percent figure again has little or no relationship with the proper amount. Water used for lawn care purposes is not business related, Butz v. Commissioner,T.C. Memo. 1976-118; *321 Gill v. Commissioner,T.C. Memo. 1975-3, and the amount of water otherwise used for the office has to be minimal compared to the amount used for household purposes. Again, because we have no reasonable basis on which to estimate how much water was used to maintain the office, any deduction must be denied. Petitioner maintains his deduction of the entire cost of a calculator was proper based on the authority of Cincinnati, New Orleans & Texas Pac. Ry. Co. v. United States,191 Ct. Cl. 572, 424 F.2d 563 (1970). Petitioner argues that this case sanctions the deduction of small capital outlays. However, we believe petitioner reads the import of that case too broadly (it requires that two essentials be met in order to obtain an immediate deduction: that the expenditure be relatively small in size and relatively large in number). However, in spite of the non-applicability of Cincinnati, New Orleans & Texas Pac. Ry. Co. v. United States,supra, we nonetheless believe petitioner is entitled to deduct the cost of the calculator currently. The expenditure in issue was $52.45 and respondent maintains that the calculator should be depreciated over a useful life life of two years. In light *322 of the relatively minor size of the expenditure and the relatively short useful life of the asset, we believe a current deduction for the cost of the calculator is proper. Sec. 1.162-6, Income Tax Regs. See Sharon v. Commissioner,66 T.C. 515, 526-527 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. applied for April 18, 1979. [4]
Finally, we come to the "foster child" issue. Respondent argues that petitioner has not satisfied his burden of proof to show that petitioner's sister-in-law qualified as a "foster child" within the meaning of section 152(b)(2). [5] *323 Sec. 1.152-2(c)(4), Income Tax Regs.[6] Respondent alternatively argues that petitioner did not show his sister-in-law to have been a member of his household for the entire year as is required in section 152(a)(9). We believe that the import of the record is such as to *324 find that petitioner's sister-in-law satisfied the requirements of both the regulation and the statute and that petitioner cared for her as his own child and that she was a member of his household for the entire year. As such, petitioner is entitled to a dependency exemption for his sister-in-law notwithstanding the fact that she earned in excess of $750 since she was age 18 in 1973. See White v. Commissioner,T.C. Memo. 1970-96. See also Staff of the Joint Committee on Internal Revenue Taxation, General Explanation of the Tax Reform Act of 1969, 91st Cong., 1st Sess., 250 (1970), and Reed v. Commissioner,50 T.C. 630 (1968). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the taxable year in issue.↩
2. It is not clear why petitioner's wife did not join in the petition since the notice of deficiency was issued to them jointly.↩
3. A better allocation may well be, as petitioner argues for on brief, based on percentage of use of all phones for business or personal reasons. See Henderson v. Commissioner,T.C. Memo. 1968-22 and Lee v. Commissioner,T.C. Memo. 1960-58↩. However, the record does not contain sufficient information on which we could make such a determination.
4. Each case must be considered on its own facts. For example, in Klutz v. Commissioner,T.C. Memo. 1979-169↩, the asset in issue cost $75 and had a useful life of five years. In that case, we required the taxpayer to capitalize the cost of the asset.
5. Section 152(b)(2) states: In determining whether any of the relationships specified in subsection (a) or paragraph (1) of this subsection exists, a legally adopted child of an individual (and a child who is a member of an individual's household, if placed with such individual by an authorized placement agency for legal adoption by such individual), or a foster child of an individual (if such child satisfies the requirements of subsection (a)(9) with respect to such individual), shall be treated as a child of such individual by blood. 6. Section 1.152-2(c)(4), Income Tax Regs., states: For purposes of determining the existence of any of the relationships specified in section 152(a) or (b)(1), a foster child of an individual (if such foster child satisfies the requirements set forth in paragraph (b) of § 1.152-1↩ with respect to such individual) shall, for taxable years beginning after December 31, 1969, be treated as a child of such individual by blood. For purposes of this subparagraph, a foster child is a child who is in the care of a person or persons (other than the parents or adopted parents of the child) who care for the child as their own child. Status as a foster child is not dependent upon or affected by the circumstances under which the child became a member of the household.